## State of New York
### Supreme Court, Appellate Division
### Third Judicial Department

Decided and Entered:  June 30, 2016                    520357
_____

In the Matter of the Claim of
    BIN YUAN,
                        Respondent.

LEGAL INTERPRETING SERVICES,
    INC.,
                        Appellant.

COMMISSIONER OF LABOR,
                        Respondent.

(Claim No. 1.)
_____

In the Matter of the Claim of
    YAQIN CHOU,
                        Respondent.

LEGAL INTERPRETING SERVICES,
    INC.,                                     MEMORANDUM AND ORDER
                        Appellant.

COMMISSIONER OF LABOR,
                        Respondent.

(Claim No. 2.)
_____

In the Matter of the Claim of
    SUZANNE LYNCH,
                        Respondent.

LEGAL INTERPRETING SERVICES,
    INC.,
                        Appellant.

COMMISSIONER OF LABOR,
                        Respondent.

(Claim No. 3.)
_____

In the Matter of the Claim of
    ELIZABETH HERRERA,
                        Respondent.

LEGAL INTERPRETING SERVICES,
    INC.,
                        Appellant.

COMMISSIONER OF LABOR,
                        Respondent.

(Claim No. 4.)

_____


Calendar Date:   April 19, 2016

Before:   Peters, P.J., Garry, Rose, Clark and Aarons, JJ.

_____


        Greenberg Traurig, LLP, New York City (Jerrold F. Goldberg
of counsel) and Law Offices of Jonathan Weinberger, New York City
(Jonathan Weinberger of counsel), for appellant.

        Bruce E. Knoll, Albany, for Bin Yuan and others,
respondents.

        Eric T. Schneiderman, Attorney General, New York City (Mary
Hughes of counsel), for Commissioner of Labor, respondent.

_____


Clark, J.

        Appeals from eight decisions of the Unemployment Insurance
Appeal Board, filed June 23, 2014, June 25, 2014, September 17,
2014 and October 21, 2014, which ruled, among other things, that

Legal Interpreting Services, Inc. is liable for unemployment insurance contributions on remuneration paid to claimants and others similarly situated.

Legal Interpreting Services, Inc. (hereinafter LIS) is engaged in the business of providing foreign language interpreting services and maintains a database of individual interpreters, such as claimants, who provide those services to its clients. Claimants filed for unemployment insurance benefits, and the Unemployment Insurance Appeal Board ultimately determined that claimants were employees of LIS, that claimants were entitled to unemployment insurance benefits and that LIS was liable for unemployment insurance contributions on remuneration paid to claimants and others similarly situated. LIS appeals.

We affirm. "The existence of an employer-employee relationship is a factual issue for the Board to resolve and its decision will be upheld if supported by substantial evidence" (Matter of Ruano [Legal Interpreting Servs., Inc.–Commissioner of Labor], 118 AD3d 1088, 1088 [2014] [citations omitted], lv dismissed 24 NY3d 1039 [2014]; see Matter of Soo Tsui [Language Servs. Assoc., Inc.–Commissioner of Labor], 135 AD3d 1098, 1099 [2016]). "While no single factor is determinative, control over the results produced or the means used to achieve those results are pertinent considerations, with the latter being more important" (Matter of Automotive Serv. Sys., Inc. [Commissioner of Labor], 56 AD3d 854, 855 [2008] [citations omitted]; see Matter of Viau [New York State Off. of Ct. Admin.–Commissioner of Labor], 125 AD3d 1223, 1225 [2015], abrogated on other grounds Matter of Mitchum [Medifleet, Inc.–Commissioner of Labor], 133 AD3d 1156, 1158 n [2015]). We have held that "an organization which screens the services of professionals, pays them at a set rate and then offers their services to clients exercises sufficient control to create an employment relationship" (Matter of Lobban [Precinct Sec. & Investigations, Inc.–Commissioner of Labor], 131 AD3d 1294, 1294 [2015] [internal quotation marks and citations omitted]; accord Matter of Ritch [Island Tutoring Ctr., Inc.–Commissioner of Labor], 139 AD3d 1151, 1152 [2016]; Matter of Klotz [Blue Perimeter, Inc.–Commissioner of Labor], 127 AD3d 1459, 1460 [2015]).

The record establishes that LIS recruits through advertisements in newspapers and social media. Before adding an individual to its database of available interpreters, LIS recruiters meet with the applicant, review his or her resume, request certain personal identification information and negotiate his or her hourly pay rate. Claimants signed contracts, which set forth rules and regulations governing their conduct when providing translation or interpretation services. Although the principal of LIS testified that the rules and regulations were included at the insistence of certain customers and were merely "suggestions," the contracts were drafted by an attorney hired by LIS and printed on LIS letterhead and do not indicate that the rules and regulations were merely suggestions.

When clients contacted LIS to request interpretation services, LIS selected a linguist from its database and provided that linguist with the specifics of the assignment, including the languages required and the date, time and location. Linguists were free to accept or decline assignments at their convenience. However, once they accepted an assignment, the linguists were required to notify LIS if they were running late, were unable to complete the assignment or were sending a substitute in their stead. With respect to pay, LIS required the linguists to submit time sheets, billed its clients and paid its linguists prior to receiving payment from those clients. A linguist's payment was not contingent upon the client's payment of the bill. Notwithstanding the existence of evidence that could have supported a contrary finding, the foregoing constitutes substantial evidence supporting the Board's determinations that LIS and claimants were in an employer-employee relationship (see Matter of Ritch [Island Tutoring Ctr., Inc.—Commissioner of Labor], 139 AD3d at 1152; Matter of Ruano [Legal Interpreting Servs., Inc.—Commissioner of Labor], 118 AD3d at 1088; Matter of FMI Interpreting Servs. [Hudacs], 192 AD2d 1006, 1006-1007 [1993]). Additionally, the Board did not err in ruling that LIS is liable for contributions on remuneration paid to all other individuals determined to be similarly situated (see Matter of Soo Tsui [Language Servs. Assoc., Inc.—Commissioner of Labor], 135 AD3d at 1099-1100; Matter of Mitchum [Medifleet, Inc.—Commissioner of Labor], 133 AD3d 1156, 1157 [2015]).

Further, we are unpersuaded by LIS's assertion that the Board failed to follow certain guidelines adopted by the Department of Labor to provide guidance to the translating and interpreting industry in determining whether an employment relationship exists. The guidelines make clear that "[n]o one single factor is controlling" (New York State Department of Labor, Guidelines for Determining Worker Status: Translating and Interpreting Industry, http://www.labor.ny.gov/formsdocs/ui/ IA318.20.pdf [last updated Jan. 2014]), and "we discern no inconsistency between the [Board's] decisions and such guidelines, which expressly adopt the well-established common-law tests of master and servant" (Matter of Soo Tsui [Language Servs. Assoc., Inc.—Commissioner of Labor], 135 AD3d at 1100; see Matter of Armison [Gannett Co., Inc.—Commissioner of Labor], 122 AD3d 1101, 1103 [2014], lv dismissed 24 NY3d 1209 [2015]).

LIS's remaining contentions, to the extent not specifically addressed herein, have been reviewed and found to be lacking in merit.

Peters, P.J., Garry, Rose and Aarons, JJ., concur.


ORDERED that the decisions are affirmed, without costs.



ENTER:

Robert D. Mayberger
Clerk of the Court